Welcome back. Thank you, Your Honor. It's always nice to be back. And may it please the Court. Andrew Wallace's 60-month statutory maximum sentence for supervised release violation is unreasonable for two related reasons. First, the District Court did not provide a sufficient explanation of the sentence that it imposed, and relatedly to the extent that any explanation can be discerned from the record, the District Court relied on improper factors such as the seriousness of the violation and the need to provide just punishment for that. What's your best case in the supervised release context for the District Court's explanation not being sufficient? Thompson. United States v. Thompson, the published decision of this Court, made very clear that the Court has the obligation to explain on the record the reasons for the decision it reached. And to answer your question, I'm recalling a comment that you made in the previous argument that this Court needs to know what the District Court did and why it did it in order to perform its appellate review function. You don't think that was pretty clear here? Respectfully not. She was looking at specific deterrents as it pertained to the defendant than protecting the public because the guidelines rate wasn't enough? Well, respectfully, Your Honor, I think that word because is missing, and that's what needs to be here. There needs to be a why. There needs to be a connection between anything that the judge mentions and the 3553A factors that are relevant in the revocation context. Have we said that? That's in Thompson, and in numerous other cases following Thompson, we've cited a few of them. There are really a number, dozens of them, where this Court is sent back. This is something that we've raised with some frequency in this Court because District Courts perhaps are not treating supervised release violations with the seriousness that they deserve. We give the District Court even greater discretion in the supervised release context than we do in the sentencing context. That's fair enough, but it's certainly not unlimited discretion. There is an important need on the part especially of the defendant, but also the public in this Court, to understand the reasons for the judge's sentence. It can't be something where a judge merely mentions, refers to factors, and pronounces a sentence. There needs to be a nexus or a connection between which of those factors, which of those facts or which of those factors, and some way that we can look at the record and say this is how the judge laid those factors in reaching the sentence. The District Court was clearly concerned that the defendant continued to engage in the same type of behavior and that supervised release wasn't productive. It wasn't working. I thought the crux of your argument is that the District Court relied on an impermissible factor. Well, they're related. We don't think there was a sufficient explanation at all to the extent that there was, the judge was relying on the impermissible factors. And this really goes to the heart of the Thompson claim is that if this Court has to make those assumptions, if this Court has to pick threads out of the record and say this is what the District Court must have been thinking, then it has to go back. And so especially, and I would push back respectfully, Your Honor, on the comment about the same type of behavior. This was the first time that Mr. Wallace was in court on a revocation, a violation, and the rape charge had been dismissed. And not only dismissed, he had obtained a civil judgment against his accuser for making a false allegation against him. And so this is something that counsel cautioned the District Judge about to not say where there's smoke, there's fire, to not see this as a pattern of activity. Yes, we acknowledge that the actual violation, the Indecent Liberties Conviction, is a serious problem, but that was something that was dealt with in the State Court, and the judge there made what it termed to be an appropriate sentence for that misconduct. And it's not the job of the District Court here to, so to speak, correct that sentence. Because that goes to the prohibited factor of just punishment. So you're saying he got the 16 months as additional punishment for the State Conviction? I think that's the only thing that we can assume was the reason. Oh, the District Court never said that. Well, no. You're saying that what it seemed to me the District Court was doing is just walking through the defendant's history in rather chronological order, noting things. Granted, it's not a model of clarity, but it does seem to support the inference that the District Court was concerned about the defendant's pattern of behavior and imposed a danger to the public and was looking at specific deterrents in this instance to protect the public. Well, I understand that we're not asking for perfection on the part of the District Court, but it's not this Court's job to do the District Judge's job for it and to try to make those inferences, to try to draw from one thing that the Court said and try to connect it up to another if the District Court didn't do that itself. And so I certainly don't want to accuse this esteemed District Judge of not knowing the record, but there's really, within the four corners of the transcript, no difference between what happened here and a judge who knows nothing about the case coming in and simply reading the PSR and the supervised release petition and then announcing 60 months. There's no connection. And what I will point out here is this was not, in contrast to a lot of supervised release cases, this was not a judge who was familiar with this defendant from the plea or trial or previous violations. When Mr. Wallace came before the Court on the revocation, it was the first time the judge saw him. And so we can't make any sort of background assumptions about what the judge must have been aware of. Mr. Bryant, I think Judge Harris has a question and she's more polite than I am about you. I'm sorry. You're very kind. I did have a question. One of the things that the District Court did refer to was the violent charges sort of at the very beginning of this story, the violent charges on which the defendant was originally sentenced before Judge Latchaw. And I know that the defendant had argued at the sentencing hearing that those charges ought to be considered in light of their age, that those were very old charges. The original charges were an additional decade out. The sky is now 50. We're talking about things that happened 35 years ago. Is it your position that on a revocation hearing, the District Court was obliged to consider that sort of relevant argument and didn't? I think so. And that's certainly another problem that arises here is that this Court and the Supreme Court have held that district judges are obligated to consider the non-frivolous arguments of both counsel and explain the egregious here that this sentence was a year above even what the government asked for. And so that's an additional problem. Not that the judge is obligated to follow the government's recommendation, but should at least explain some reason for rejecting it. And so in the arguments that both counsel made, the district judge, we don't believe, really gave a sufficient explanation for rejecting either. Well, what about the defendant's failure to report the interaction with the police, the failure to report a change in residence? Aren't there multiple conditions of supervised release that were violated here that the District Court noted? That's fair enough, Your Honor, but certainly standing alone, those would not justify a 60-month sentence. I think that those technical reporting requirements, those violations happen all the time. And these are the kind of things, and we can tell that here, the probation officer, when the original petition was dismissed, there was still a reporting violation. And the probation officer said that that's not really worth having a whole revocation hearing and revoking and imposing a sentence on. These are the kind of things that in the fluid process of supervised release or probation, any sort of supervision, the probation officer and the defendant will work together. And if the defendant maybe isn't perfect, the probation officer will maybe impose stricter conditions, and things go back and forth a little bit. And so it's not unusual at all to see a reporting violation. And of course, one of the reporting violations, we think there was a, Mr. Wallace pled guilty to it, but we think he had a sufficient explanation for it to say that because he wasn't arrested, it was just a conversation with the police, that there wasn't really anything to report. And then in another one where it was about his change of residence, he was living out of his car and felt that just because he didn't have a fixed address, that there really wasn't anything to report there. And now we understand that that's not satisfactory, and he pled guilty to those violations, but that does put them in some kind of context that these are not, this is not somebody who's absconding from supervision, for example. So, if... But you're not suggesting, are you, that if we were mandated, or are you, that if we were to remand for resentencing, or send this back for resentencing, the district court couldn't justify the sentence it imposed? No. And that's really perhaps a substantive reasonableness or a harmless error kind of analysis that this court first needs to make a finding on procedural reasonableness before it even considers those issues. But we don't think this is harmless. We don't, we think that the court would not be able to do that. Now, we recognize that if the court had made a more extensive record in findings, that it would be a much harder appellate case to make after a remand. But we think that there's enough here that's positive on Mr. Wallace's behalf. Well, but she cited that, I'm sort of going through this. For example, she recited the characteristics of his family, she was pleased to see that he got employment, that's always a good sign, that job interview, to your credit. I mean, she goes through the items in the plus column, but then she gets to the items in the minus column, and they're a fair number. We acknowledge that, but there still needs to be the connection from which of the 3553A factors those go to and how the court is making that weighing process. I'm sorry? That's a valid factor, but the court needs to show the work, so to speak. And so one other thing that I'd like to mention is that at the time of the original revocation proceeding, Mr. Wallace's state conviction was still on appeal. And so the district judge here could not have had complete assurance that all of the safeguards from the state court would necessarily remain in place. Now that has been affirmed and is final in the state court system. And so on a remand, his situation is different. His history and characteristics are different because that's final, and the judge can have complete assurance that the sex offender monitoring and treatment, the order to stay away from children, sex offender registration, 20 years of probation, all of those are going to be in place. And the judge never mentioned that that's something certainly that defense counsel mentioned at the sentencing proceeding, and the district judge never really responded to that as an important reason not to punish him as severely as possible. And so certainly in a situation where statutory maximum sentence is imposed, that is double the guideline range, that is higher by a year what the government asked for, this court's scrutiny needs to be heightened and needs to be able to examine the record and say clearly from the record, not from assumptions or inferences, but said this is what the judge said and that's simply not here. If there are no other questions now, I've reserved some time. Thank you. Thank you. May it please the court. Good morning, your honors. Your honors, it's clear from the record in this case the court did not base a sentence on seriousness of the indecent liberties violation, much less predominantly on the seriousness of that offense. Can I ask you a question about seriousness? So at the initial hearing, and with all presumptions of good faith and everything, I'm not trying to make accusations, but it did seem as though the government argued, and it did expressly argue, that the state court had underpunished the indecent liberties thing, that it was that their sentence was disgracefully short. And so in light of that argument that was sort of floating around, I do have a concern that when the district court then comes back and says, well, refers to you've got these flags, which concern the court, and doesn't say what they are, I'm trying to do appellate review here, and how do I know one of those flags isn't the underpunished seriousness of the indecent liberties thing once that's sort of out in the air? Yes, thank you, your honor. And I, first of all, the court did reference the flags that it's concerned about in the second hearing, which is in February of 2015, I think three months after the initial hearing, and it walked through his history, and those are the flags I think it's pretty clear it's referring to. I mean, I guess it is when we're trying to do appellate review, I just read this, and it says, you've got these flags which concern the court, and I think, oh good, here come the things that concern the court, and it doesn't say what the flags are. It's unhelpful. I do think the flags being referenced were the defendant's long history is from the 80s onwards of violations, and then less than three years after release, a new and very serious child sex crime violation. To get back to what the government said in the initial hearing, it did note that the sentence of one year and ten months, it said, was a disgrace, but what it did in the next paragraph in the argument is it tied that directly to, I think the facts of this case certainly indicate that this defendant is a danger to the public, and the court did not rule at that time, and there's no indication that the court latched on to what the government felt was an inadequate sentence in the state when it did the actual sentencing three months down the road. So, I don't think that seriously... You're not suggesting, though, that this was something we should hold up as a model of clarity? Well, Your Honor, there can always be more in any sentencing hearing, and that's the run of revocation hearings. This is a careful record made by a judge who is careful and who takes seriously sentencing, both post-conviction and at revocation. The judge went through and said what he was going to do. It said, I'm going to look at the 3553A factors, but it listed only the ones that it's supposed to consider under 3583E. It left out all of the 3553A2A factors. It left out seriousness of the offense, promote respect for the law, and provide just punishment, and it said, I'm going to look at the factors, and it listed out all the correct factors, the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence, and public safety, and those are, as the court knows, the two factors that it noted predominated in its mind after running through a pages-long exploration, an individualized exploration of this defendant and his background, really going back to his childhood. And then it's sort of like you have the law section, and then you have the fact section, and then what we're looking for is the reasoning section, the part that ties these two things together, and I don't think the fact that the fact section was lengthy doesn't really answer the question about how it ties together, and so there's really this one paragraph, though, that does tie it together, and it mentions flags, and I assume, I agree with you, I assume that refers to something that has been said before, but I don't know which things that were said before. And it does refer to the violent charges on the original conviction. Yes. And I guess I want to ask you the same question I asked defense counsel, so if there was an argument here that, well, keep in mind that some of those are 35 years old, and this is a substantially older person, and that ought to be relevant when you look at the violence of those charges, and I don't see a response to that. Is that a problem? I don't believe it is, Your Honor. I think it's clear from the record, and the judge had the PSR in front of her, it's obvious that the initial charges were in the 80s, and she talks about the Delaware judges. But she doesn't address the argument, and I know in other contexts, at least, we would require that the judge actually address, you know, a non-frivolous argument, and you would agree she doesn't, I'm sorry, the district court did not actually address that argument. I don't think that she discussed why she didn't think the staleness of the, the perceived staleness on the defense argument of the old convictions, but, Your Honor, what I would have argued, and what I'd argue here is that what we have is a defendant who's shown, minus the time he's been incarcerated, really a constant string of crimes and violations. No, I know, I guess for me what makes this difficult is she really didn't say very much in this, sorry, I keep saying she, the court really did not say very much in this one kind of nexus paragraph, and so I'm putting a fair bit of weight on the few things that are here. I understand. So that's what makes it concerning to me. Yes, and I think I know what you're saying, which is that, and it may have been more effective if the court sort of interleaved the flags and described the flags individually when she talked about the flags, and then went right to public deterrence and, to deterrence and public safety, but I think it's reasonably clear from basically the recitation over pages of the defendant's violations, and then as soon as he's out, it's the child sex violation, the interactions he had at the Newport News bus station, where he was eventually banned, I think, for life from being there, that this is someone who is, who is posing a real danger to public safety and who is a real danger to public safety and public safety, and so I think that's a good thing to consider, and those are two proper factors under the inquiry. Would your argument be different if this were an initial sentencing? Would you think this is adequate? Your Honor, as far as the record under initial and initial post-conviction sentencing, I think this would be adequate. I think that it would be closer to the line, certainly, but I do think it would be adequate there, and if it's adequate there, it's obviously adequate here because the standard is more deferential at the revocation proceeding. As far as the, just the general Thompson argument about the adequacy of the sentence, I want to just briefly address that. In Thompson, the court just pronounced the sentence without giving any reasons, and then later on in the proceeding, it said something about risk of flight, and the government hinged its argument that that was a sufficient reason for the sentence, but Thompson, in Thompson, the court didn't give any reasons for the sentence, and in the cases, I think the cases that the defendant cites on page 17 and which were referenced here, Thompson, Carter, Tausey, Ford, Johnson, Cass, Lopez, those are all cases where this court vacated a sentencing for having an adequate statement of the reasons, but in those cases, there was usually no statement or very little of a statement. In one of them, the guidelines range wasn't calculated, and in another one, the defense was not allowed to argue. So are those supervised release cases or original sentences? I believe that I think five of the six are supervised release cases. I don't have that at hand. Very briefly on the, I want to address very briefly Webb and the seriousness of the offense. The judge did not reference seriousness here. It did not reference the rape, sodomy convictions, sorry, sodomy charges which were dismissed, but what the judge did say, she actually thanked defense counsel for bringing to her attention that there was a judgment against the accuser basically. And so under Webb, even if she had said, I'm looking at the seriousness of the offense, Webb I think is clear that so long as that does not predominate, that's fine. It's hard to totally separate seriousness of the offense out in nature and circumstances, and I think here the judge did a pretty good job of doing that and looking toward what is the real concern here, and foremost in her mind was public safety, and that was the basis for the sentence. Unless your honors have other questions, that's all I have. Thank you. Thank you. Mr. Bryant, you reserve some time for rebuttal. Thank you, your honor. Just very briefly, a couple of points. To compare this to an initial sentencing proceeding, Thompson relied directly on a case called and really applied the same standard in the revocation context. And what's important to note is that there's not some special supervised release prison that revoked defendants go to. Mr. Wallace is doing the same time as any other prisoner, and he's in the United States penitentiary. You're not suggesting, though, that the standard is the same, are you? Not directly, but the court needs to keep in mind, it's not something— I mean, the courts have more leeway in imposing revocation sentences, do they not? Yes, that's absolutely true. But it's still serious business, which I think is Judge Davis's line from the Ferguson concurrence that we've cited in our briefs. So I would just ask the court to keep that in mind. The statutory maximum 60-month sentence is serious business, and this court's review needs to be searching. And so I think in some ways—my colleague referred to the Thompson case—in some ways this is worse than Thompson, because Thompson was a within-guideline sentence that this court could presume was reasonable. This is double the guideline range, and no such presumption applies here. And simply listing factors is not enough under this court's precedent. There has to be consideration. Recitation is not consideration. This court said that over and over. And the last thing I want to say is that the process in the criminal justice system needs to be fair, but it also needs to be seen to be fair. The defendant most especially, but also the public and this court, has to be able to discern from the record the reasons for a district judge's decision. And with that, I will ask the court to vacate the sentence imposed on Mr. Wallace and remand for re-sentencing. Thank you very much. Thank you very much. Mr. Bryant, we will come down in group counsel and take a very brief recess. This honorable court will take a brief recess.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris